IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

ANNA M. CLAYTON,

          Plaintiff,

v.                                  Case No. 7:08-cv-00592

JAMES DICKENS and
JEMKO TRANSPORT, INC.,

          Defendants.

## MEMORANDUM SUPPORTING DEFENDANTS' MOTION TO EXCLUDE

James Dickens and Jemko Transport, Inc. (the "Defendants"), by counsel, request that the Court exclude all evidence or testimony related to the Plaintiff's May 15, 2009, back surgery including, but not limited to, the medical bills associated with that procedure, because the Plaintiff failed to properly disclose that evidence and it is otherwise unsupported by the requisite medical opinion testimony.

### I. Background

The Plaintiff, Anna Clayton, alleges that she sustained various physical injuries during a minor accident at the Lancer Truck Stop located in Pulaski County, Virginia. Clayton was a passenger in a commercial tractor-trailer driven by her husband, and on September 9, 2006, the couple stopped at the Lancer Truck Stop to rest and refuel. While they were sleeping a second tractor-trailer owned by Jemko Transport, Inc., and operated by its employee, James Dickens, hit the Plaintiff's truck in the truck stop parking lot. The rear tire on the trailer of the Jemko truck contacted the front driver's bumper of the Plaintiff's tractor causing minor damage:





Clayton contends that the force of the impact jostled her so violently within the cab that she injured her back, neck and shoulders. Defendant James Dickens and his passenger, Ray Dickens, spoke with the Plaintiff's husband after the collision, but do not recall seeing the Plaintiff or that her husband reported any injuries to them.

## II. The Plaintiff's Back Surgery

According to her December 16, 2008, discovery responses, Clayton contends that she injured her "lower back at the L4-L5 region" in the accident, and initially claimed incurred medical expenses totaling $44,488.94.[1] The Plaintiff also identified her treating physicians, including her doctors in Louisiana, in both her discovery answers and her subsequent Rule 26(A) disclosure.[2]

Paragraph 19 of the Court's January 5, 2009, scheduling order provides that "[w]ith respect to expert witnesses who are not retained or specifically employed to provide expert testimony . . . the Plaintiff must disclose the identity of any such witnesses and provide a summary of all opinions the witness will render and the basis therefore not later than 45 days from the date of this order." The parties subsequent entered an Agreed Discovery Plan modifying this disclosure requirement as follows:

> The parties have agreed to modify the disclosure deadlines in paragraphs 18 and 19 of the Court's pre-trial scheduling order as follows:
>
> 1. The Plaintiff shall make the expert witness disclosures described in the Court's pre-trial scheduling order no later than 120 days before trial . . . .

Accordingly, the deadline for the Plaintiff's disclosure of any non-retained expert witnesses was April 14, 2009.

---

[1] A copy of the Plaintiff's Answers to Interrogatories is attached as Exhibit 1; see interrogatory answers 2 and 4.

[2] Exhibit 1, interrogatory answer 6; a copy of the Plaintiff's Rule 26(A) disclosure is attached as Exhibit 2.

On April 10, 2009, the Plaintiff filed an expert designation identifying one retained expert, Dr. James Vascik, and four treating physicians.[3]  That disclosure contains only fleeting references to the Plaintiff's contention that she suffered a back injury in this accident. Specifically, Dr. Vascik's disclosure states that he "diagnosed Plaintiff Clayton with a congenital angioma of the L-1 vertebral body, and minor disk changes which were exacerbated by the September 19, 2006, motor vehicle accident," and that he is "expected to testify . . . that *some or all* of her injuries are attributable to *and/or* aggravated by the motor vehicle accident giving rise to this matter."[4]  The designation for Clayton's chiropractor, Dr. Thomas Johnson, refers to her complaints of low back pain, but identifies no diagnosis regarding the Plaintiff's lower back.[5] Similarly, the designation for Dr. Eubulus Kerr refers to low back pain and indicates that "Dr. Kerr will testify . . . that during the course of his treatment he diagnosed [Clayton] with a displaced vertebrae," but does not indicate whether that vertebrae was in the Plaintiff's lower back or relates to her neck injury claim.[6]  And the entire disclosure contains no statement that any physician will testify the Plaintiff required or planned to have future back surgery.

With this background, the Defendants deposed the Plaintiff on May 5, 2009.[7]  During her testimony, Clayton revealed — for the very first time — that she was scheduled for back surgery with Dr. Bharat Guthikonda at the Louisiana State University hospital the following week.[8]  The Plaintiff did not identify Dr. Guthikonda or disclose her impending surgery by supplementing her initial discovery answers before her deposition.

---

[3] A copy of the Plaintiff's expert disclosure is attached as Exhibit 3.
[4] Exhibit 3, page 2.
[5] Exhibit 3, page 5.
[6] Exhibit 3, page 6.
[7] A copy of the Plaintiff's deposition testimony is attached as Exhibit 4.
[8] Exhibit 4, pages 88 and 89.

On May 29, 2009, Plaintiff's counsel notified the Defendants' attorney that the Plaintiff had back surgery on May 15, 2009, "to remove a tumor located on the L-1 vertebra of her back, and to fuse together L-4 and L-5 vertebrae." Clayton's attorney further indicates that the Plaintiff "does intend to claim this procedure as a component of her damages in this case."[9] Thereafter, on June 23, 2009, the Plaintiff filed her first supplemental interrogatory answers itemizing additional medical expenses for her May, 15, 2009, surgery totaling $25,965; however, that supplementation included no information about her surgeon, Dr. Bharat Guthikonda, nor any new medical opinions.

During his May 26, 2009, deposition, the Plaintiff's retained neurosurgical expert, Dr. James Vascik, testified that the Plaintiff was not a candidate for back surgery, adding that he could not find an anatomical cause for her alleged back pain or opine this accident injured her back:

> Q.  When you examined her, did you determine whether or not she had any kind of injury to her lower back or any problem with her lower back?
>
> A.  I indicate in the second to last paragraph that my interpretation of her radiographic studies was that she had no structural problem, no need for surgery; if that answers your question.
>
> Q.  Sort of.  Let me back up again.  She came in telling you that she had lower back pain, correct?
>
> A.  Yes.
>
> Q.  Okay, and it was your understanding that her lawyer asked you to look at her to determine if she needed surgery for that problem?
>
> A.  Yes.
>
> Q.  Okay.  Were you able to determine from a medical statement what was causing her lower back claim?
>
> A.  No.

---

[9] A copy of Plaintiff's counsel's May 29, 2009, correspondence is attached as Exhibit 5.

Q.  I take it then that since you weren't able to identify an anatomical cause for her lower back pain, that you can't give an opinion to a reasonable degree of certainty that the accident produced a specific injury to her lower back?

A.  I cannot.[10]

Additionally, following her deposition, Clayton answered the Defendants' Requests for Admissions by admitting that her medical records indicate that she complained of back pain before this accident.[11]

### III. Argument

A.      **Clayton lacks the required foundation to introduce evidence of her recent back surgery and any medical expenses associated with that procedure.**

Clayton's attempt to claim her May 15, 2009, back surgery in this litigation faces several critical deficiencies.  First and foremost, it is utterly unsupported by any medical opinion testimony sufficient to lay a proper foundation for the admission of that evidence. The Plaintiff's expert disclosures do not refer to her back surgery, nor has she disclosed a medical expert that will testify she required back surgery because of this accident.  More importantly, since having this surgery she has not disclosed any opinion testimony from her surgeon — or anyone else — making a causal connection between that procedure and this accident.  The absence of that evidentiary link is fatal, but even more glaring in the face of the opinion testimony from her own retained expert, Dr. Vascik, indicating that (1) she did not need surgery for her back problems, and (2) as a neurosurgeon, he found no anatomical cause for her back problems that he could link to this accident.

These concessions, coupled with Clayton's own admission that she suffered back pain both before and after the accident, underscores the absence of any medical testimony suggesting

---

[10] A copy of this portion of Dr. Vascik's deposition testimony is attached as Exhibit 6.

[11] A copy of the Plaintiff's Responses to the Defendants' Requests for Admissions is attached as Exhibit 7.

{W1037432.1 }

a causal connection between her back surgery and this accident. Clayton simply cannot assert the costs and expense of a medical procedure when no doctor is prepared testify that it was necessitated by the accident, because that would invite the jury to speculate on her damages and their relationship to the collision. The Federal Rules of Evidence require much more than that.

**B.      The Plaintiff failed to timely disclose her impending surgery, any associated expenses evidence, and any supporting medical testimony.**

Together, the Court's scheduling order and the parties' Agreed Discovery Plan required the Plaintiff to disclose any non-retained expert opinions — including those of her treating physicians — by April 14, 2009. Notwithstanding that requirement, Clayton failed to alert the Defendants to her impending surgery before her deposition, has never disclosed her surgeon as an expert witness, and cannot identify any medical opinions linking her surgery to the accident. Thomas omissions are prejudicial to the defense for several reasons.

First, hiding the Plaintiff's impending surgery deprived the Defendants of a reasonable opportunity to obtain and review Dr. Guthikonda's medical records before the Plaintiff's deposition which handicap their ability to fully explore that aspect of Clayton's treatment history during her deposition. That handicap is even more pronounced where the Defendants must rely on medical releases from the Plaintiff to obtain her out-of-state records from Louisiana, a slower discovery process. Second, the Plaintiff's attempt to claim medical expenses for a procedure unsupported by a causation opinion from a physician precludes the Defendants' ability to determine the basis for the Plaintiff's claim and to defend against it. For example, the Plaintiff's expert disclosures recite that her healthcare providers will say that her back problems were caused *or* aggravated by the accident. But those are two entirely different causation scenarios with disparate implications for the jury: Will the Plaintiff and her experts contend her

back was healthy before the accident or that she had a pre-existing condition worsened by the collision? The Plaintiff's muddled back claim becomes even more confusing when her own retained expert says she did not need surgery. and she denied prior back problems in her deposition, but admits to those pre-existing symptoms in response to the Defendants' Requests for Admissions. Consequently, it is impossible for the defense to divine whether the Plaintiff intends to claim that her back surgery results from a new condition caused for the first time by the accident, aggravation of a pre-existing condition and, if so, exactly what that pre-existing condition was, or if some as yet unidentified medical expert believes the accident produced the need for her back surgery.

Third, Clayton's decision to formally disclose her new surgical expenses six days before the June 29, 2009, discovery deadline prevents the Defendants from properly discovering that aspect of her care and any associated records or bills.

Rule 37(c)(1) prohibits just this type of "trial by ambush":

> [a] party that without substantial justification fails to disclose information required by Rule 26(a) or Rule 26(e)(1) . . . is not, unless such failure is harmless, permitted to disclose as evidence at trial, at a hearing or on motion any witness information not so disclosed.

The only exceptions to exclusion are if the nondisclosure was "substantially justified" or "harmless."[12] The Fourth Circuit has instructed that to determine whether a party's nondisclosure of evidence that should have been produced was substantially justified or harmless a trial court should examine (1) any surprise to the party against whom the evidence would be offered, (2) the ability of that party to cure the surprise, (3) the extent to which allowing the evidence would disrupt trial, (4) the importance of the evidence, and (5) the non-disclosing

---

[12] *See* Rule 37(c)(1).

party's explanation for its failure to disclose the evidence.[13]  Guided by those factors, the Court should exclude evidence of the Plaintiff's May 15, 2009, back surgery.

Plainly, the Defendants were completely surprised by the Plaintiff's disclosure at her deposition that she planned to have major back surgery the following week.  That surprise deprived the defense of the ability to fully investigate the complete nature and extent of the Plaintiff's medical treatment before her deposition, delay the deposition until after the surgery, or to properly question Clayton about any information contained in Dr. Guthikonda's medical records.  Additionally, the Defendants did not have a reasonable opportunity to evaluate Dr. Guthikonda's medical records before questioning the Plaintiff, have the Defendants' medical expert review those records in forming his opinions, or respond directly to anything Dr. Guthikonda has to say.

Furthermore, the Defendants still do not know Dr. Guthikonda's opinions, if any, or what medical testimony, if any, the Plaintiff intends to use to link her surgery expenses to this accident.  None of that is curable at this stage absent extension of discovery deadlines or a continuance, which will clearly disrupt trial.  The evidence is obviously critically important because the additional medical bills substantially increase both the Plaintiff's compensatory and non-compensatory damages.  And Clayton has no legitimate explanation for failing to timely supplement her discovery answers to apprise the Defendants of her planned surgery, or to disclose the requisite medical opinion testimony that establishes the foundation for admission of that evidence.

Under the guiding principles of *Southern States*, the Court must exclude this component of the Plaintiff's claimed damages and any related medical opinion testimony.

---

[13] *Southern States Rack and Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3rd 592, 597 (4th Cir. 2003).

{W1037432.1 }

## IV. <u>Conclusion</u>

For the reasons stated, the Defendants respectfully request that the Court exclude any and all evidence or opinion testimony related to the Plaintiff's May 15, 2009, back surgery.

JAMES DICKENS and
JEMKO TRANSPORT, INC.

By Counsel

*/s/ David W. Hearn*
David W. Hearn (VSB No. 37347)
Justin W. Ward (VSB No. 48893)
Sands Anderson Marks & Miller, P.C.
801 East Main Street, Suite 1800
Richmond, VA  23219-1998
804-783-7285 – phone
804-783-7291 – fax
dhearn@sandsanderson.com
*Counsel for the Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of July, 2009, the foregoing Memorandum Supporting Defendants' Motion to Exclude was filed electronically with the Court and mailed first-class, postage pre-paid, to the following counsel of record:

Danny D. Ashwell, Jr., Esquire
Daniel Crandall & Associates
366 Elm Avenue, SW
Roanoke, VA  24016
*Counsel for the Plaintiff*

*/s/ David W. Hearn*
David W. Hearn

{W1037432.1 }